UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
THOMAS QUALLS, *pro se,*                          :
                                                  :
                              Petitioner,         :
                                                  :         **OPINION & ORDER**
              -against-                           :         07-cr-14 (S-1)(DLI)
                                                  :         09-cr-418(DLI)
UNITED STATES OF AMERICA,                         :         06-cv-5852(DLI)
                                                  :
                              Respondent.         :
-----------------------------------------------------------------x
**DORA L. IRIZARRY, United States District Judge:**

On November 5, 2008, Petitioner, Thomas Qualls, ("Petitioner") was convicted, *in absentia,[1]* after a month-long jury trial of one count of conspiracy to commit mail and wire fraud, one count of mail fraud, twelve counts of wire fraud, and two counts of obstruction of justice in violation of 18 U.S.C. § 1349, 18 U.S.C. § 1341, 18 U.S.C. § 1343, 18 U.S.C. § 1512(c)(1) and 18 U.S.C. § 1512(c)(2), respectively. *See,* Superseding Indictment, Dkt. Entry No. 49; Jury Verdict, Dkt. Entry No. 153. On November 6, 2008, the jury further rendered a verdict in favor of the government as to the forfeiture of $922, 382.00 as proceeds of defendant's fraudulent acts. *See,* Jury Verdict, Dkt. Entry No. 155.

Petitioner had absconded to Canada (*See,* FN #1 below). In March 2009, authorities captured Petitioner in Montreal, Canada, and returned him to this district after extensive extradition proceedings. Petitioner had been indicted by grand jury of this district in a separate case for bail jumping. *See,* Indictment, Dkt. No. 09-CR-418, Entry No. 1. Proceedings on both cases were

---

[1] **Error! Main Document Only.**On November 3, 2008, the morning that closing arguments were to be held, defendant failed to appear, and the Court issued a bench warrant for his arrest. The trial was adjourned until the next day to give the government and defense counsel the opportunity to locate and produce defendant and give defendant the opportunity to voluntarily appear for trial. On November 4, 2008, defendant failed to appear, and, upon hearing the parties, the Court found that the defendant had willfully and voluntarily absconded. As such, the trial continued to verdict. *See,* Order Granting in Part and Denying in Part Government's Motion for Forfeiture re: Bail, Dkt. Entry No. 169.

delayed, *inter alia,* due to psychiatric examinations of Petitioner conducted at Petitioner's request as well as assignment of counsel issues. *See generally,* Case Docket Nos. 07-cr-14(S-1)(DLI) and 09-cr-418(DLI). Petitioner ultimately pled guilty to bail jumping, and the Court consolidated that case with the original trial case (the "instant case") for sentencing purposes On June 17, 2014, the Court sentenced Petitioner to 150 months of imprisonment on each count of conviction after trial to run concurrently with each other, and 60 months of imprisonment for the bail jumping charge, to run consecutively to the fraud sentences. Each term of imprisonment was to be followed by three years of supervised release with conditions, to be served concurrently with each other. *See,* Judgment, Dkt. Entry No. 248, at 3-4.

Petitioner appealed his conviction and sentence to the Second Circuit Court of Appeals, arguing, *inter alia,* that: (1) the district court violated Petitioner's rights under the Confrontation Clause by admitting at trial testimony pertaining to third-party business records, and (2) his sentence was procedurally and substantively unreasonable. *See, United States v. Qualls*, 613 F. App'x 25, 27 (2d Cir. 2015). On May 28, 2015, the Second Circuit affirmed Petitioner's conviction and sentence in a summary order. *See, generally*, *Id.* The Supreme Court denied *certiorari* on October 13, 2015. *Qualls v. United States*, 136 S.Ct. 338 (2015).

Petitioner, proceeding *pro se*,[2] timely filed this motion challenging his sentence pursuant to 28 U.S.C. § 2255 ("Section 2255"). *See, generally*, Dkt. Entry No. 253 ("Petition"); Dkt. Entry No. 257 ("Mem.").[3] Petitioner contends that his sentence should be vacated because: (1) his

---

[2] In reviewing Petitioner's motion, the Court is mindful that, "[a] document filed *pro se* is to be liberally construed . . . and a *pro se* [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Accordingly, the Court interprets the Petition "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis, citations, and internal quotation marks omitted).

[3] Unless otherwise specified, all references to docket entries are to docket number 07-CR-14(S-1)(DLI).

counsel was constitutionally ineffective in (a) failing to recognize Petitioner's mental health issues; (b) failing to investigate Petitioner's mental health and raise the issue of his competence at trial and sentencing; and (c) not being proficient in the requirements for a sentencing departure under United States Sentencing Guidelines ("U.S.S.G.") § 5K2.13 and *United States v. Valdez*, 426 F.3d 178, 184 (2d Cir. 2005); (2) his counsel operated under a conflict of interest; and (3) the Court exhibited bias towards Petitioner. Mem. at 3; *See, also,* Petitioner's Mot. for Summary Disposition ("Reply"), Dkt. Entry No. 261.[4]

In opposition, the government argues that defense counsel was not ineffective because there were insufficient indicia of incompetence to raise it as an issue before or during trial, and the Court's own observations, over the course of a month-long trial, supported a finding of competence to stand trial. Gov't Mem. of Law in Opp'n to Mot. Pursuant to 28 U.S.C. § 2255 ("Opp'n"), Dkt. Entry No. 259, at 8-10. The government further argues that defense counsel, in fact, did seek a departure under § 5K2.13, and the Court's discretionary decision not to downwardly depart is not a basis upon which to challenge Petitioner's sentence. *Id.* at 10-11. The government additionally contends that Petitioner's argument that his counsel was somehow conflicted is belied by the fact that Petitioner requested the reappointment of his trial counsel following his return from Canada. *Id.* at 11-12. Finally, the government contends that Petitioner's claim of Court bias towards him is procedurally barred, and, in any event, meritless. *Id.* at 14-15.

For the reasons set forth below, the Petition is denied in its entirety.

---

[4]     Although Petitioner has styled his Reply as a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Court construes it as a Reply in further support of his Petition.

## BACKGROUND[5]

Petitioner's conviction stems from his role as a principal, president, and treasurer of International Foreign Currency, Inc. ("IFC") and his participation in a fraudulent investment scheme involving foreign currency exchange markets. *See, United States v. Qualls*, 25 F. Supp.3d 248 at 251-52 (E.D.N.Y. 2014) (overruling defendant's objection to the pre-sentence report). Following his indictment for mail and wire fraud, money laundering and obstruction of justice charges, and prior to closing arguments at his jury trial, Petitioner fled the jurisdiction. Petitioner was convicted *in absentia* and sentencing was held in abeyance pending his return.

After Petitioner fled, his trial counsel, Zachary Margulis-Ohnuma ("trial counsel"), moved to withdraw as counsel. Mot. to Withdraw & Aff. of Zachary Margulis-Ohnuma, Dkt. Entry No. 163. Trial counsel cited a "total breakdown of communication" and "irreconcilable differences" between him and his client as the grounds for his motion. *Id.* at ¶ 2. At a hearing held on December 17, 2008, trial counsel explained that he felt Petitioner had "used [him]" in communicating "a bald-faced, manipulative lie" to the Court that Petitioner would return to Court for the remaining portions of the trial. *See,* Dec. 17, 2008 Hr'g Tr. ("Dec. 17 Tr."), Dkt. Entry No. 180, at 3:8-19. The government opposed the motion arguing that trial counsel's predicament "would be one that would be shared by any future counsel" and it would "be premature for him to be dismissed". *Id.* at 10:2-13. However, since trial counsel claimed he could no longer zealously advocate for Petitioner, the Court granted the motion to withdraw. *Id.* at 13:17-18.

On July 31, 2012, following Petitioner's capture in Canada and extradition to this district, the Court appointed Martin Geduldig, Esq. to represent Petitioner during sentencing. Mem. at 6.;

---

[5] The Court assumes the parties' familiarity with the facts and circumstances of this case, which are set forth in the Court's previous opinion concerning sentencing. *See, Qualls*, 25 F. Supp.3d at 251-52, and 613 F. App'x 25, respectively and the Second Circuit's Summary Order, affirming Petitioner's conviction. Only those facts necessary to explain the Court's decision are recounted herein.

July 31, 2012 Minute Entry Re: Status Conference. After initial preparatory meetings, Mr. Geduldig requested a mental health evaluation, and the Court appointed Dr. Lawrence Siegel to perform the evaluation. *Id.* Dr. Siegel concluded that his psychological test of Petitioner was "of limited value due to Qualls's 'unwillingness or inability . . . to disclose personal information.'" Ex. A to Opp'n, Gov't Br. on Appeal ("Gov't Br."), Dkt. Entry No. 259-1, at 14-15. Nonetheless, Dr. Siegel "suspected that Qualls might be suffering from delusional disorder" and suggested additional psychological testing. *Id.* at 15; Mem. at 6.

On November 20, 2012, Petitioner filed a letter requesting the reappointment of Mr. Margulis-Ohnuma as his counsel. *See,* Ltr. dated Nov. 18, 2012 ("Nov. 18 Ltr."), Dkt. Entry No. 207. As the basis for the motion, Petitioner cited "major disagreements" between him and Mr. Geduldig and noted "a previous and comfortable relationship between the defendant and Mr. Ohnuma." *Id.* Petitioner felt that "[Mr. Margulis-Ohnuma's] reassignment could expedite the [sentencing] process," and he indicated that he had spoken with Mr. Margulis-Ohnuma, who had "agreed and expressed the desire to return to and be reassigned to represent the defendant for sentencing, if YOUR HONOR will allow." *Id.* (emphasis original). On December 17, 2012, the Court relieved Mr. Geduldig and reappointed Mr. Margulis-Ohnuma.

On January 28, 2013, based on Dr. Siegel's evaluation and on the parties' consent, the Court directed the Bureau of Prisons ("BOP") to conduct a psychological evaluation of Petitioner. *See,* Order for Mental Evaluation, Dkt. Entry No. 211. Dr. William Ryan conducted a psychological evaluation for the BOP and found that Petitioner had a "delusional disorder based on his current delusions regarding his purported work in 'asset recovery operations.'" Gov't Br. at 15. Dr. Ryan found that Petitioner "'understands his current charges arose directly from

activities within a business unrelated to his asset recovery activities,'" and, thus, concluded that Petitioner was competent to stand trial and participate in sentencing. *Id.*; Mem. at 6-7.

At sentencing, Petitioner, through counsel, moved for a departure from the Sentencing Guidelines Range ("SGR") based on diminished mental capacity under U.S.S.G. § 5K2.13. In support of that motion, Petitioner submitted an evaluation by his own psychologist, Dr. Sanford Drob. *See,* Mem. at 7. Dr. Drob concluded that Petitioner suffered from delusional behavior and that he had been delusional for at least ten years prior to the evaluation. *See, Id.* at 7-8; Opp'n at 4. Based on "the evidence adduced at trial, the Court's own interactions with Defendant while in Court, the multiple psychological reports, and the parties' submissions and arguments, the Court [found] that a downward departure [was] not appropriate in this case." *Qualls*, 25 F. Supp.3d at 258.

Petitioner now contends that his trial counsel should have recognized that his competence was at issue, investigated whether Petitioner was competent to stand trial, and been better prepared to argue for a diminished mental capacity sentencing departure. Mem. at 3, 17. Petitioner claims the three psychological evaluations evidence his counsel's ineffective assistance in not recognizing and further investigating his mental health issues. *Id.* at 8. Petitioner further argues that trial counsel admitted at sentencing to providing ineffective assistance by commenting that Petitioner "told wacky stories sometimes" and he "should have focused on those wacky stories and found out whether [Petitioner] was competent to stand trial at the time." *Id.* at 18. Petitioner also contends that trial counsel operated under a conflict of interest because he "disparage[d]" Petitioner in his motion to withdraw as counsel and at the subsequent hearing on the motion. *Id.* at 19. Finally, Petitioner argues that the Court was biased against him in making disparaging

remarks about Petitioner's family and applying a series of "discretionary" sentencing enhancements. *Id.* at 19-20. For the reasons set forth below, the Petition is denied in its entirety.

## DISCUSSION

### I. Ineffective Assistance of Counsel

To plead an ineffective assistance of counsel claim, a petitioner must show that: (1) his "counsel's representation fell below an objective standard of reasonableness," and (2) there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). A "reasonable probability" of a different result is a "probability sufficient to undermine confidence in the outcome." *Id.* at 694. Conclusory allegations of ineffective assistance of counsel are insufficient. *See,, e.g.*, *Wright v. United States*, 2014 WL 4924436, at *3 (E.D.N.Y. Oct. 2, 2014) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)) ("Conclusory allegations that are entirely unsupported by objective evidence cannot sustain a claim for ineffective assistance of counsel."); *Moreau v. Ercole*, 2011 WL 1741824, at *7 (E.D.N.Y. May 5, 2011) ("[A] petitioner must do more than make vague, conclusory, or speculative claims . . . ."); *Petrucelli v. United States*, 2009 WL 4858081, at *10 (S.D.N.Y. Dec. 15, 2009) ("Where allegations of ineffective assistance are conclusory and give no indication as to what exculpatory evidence may have been revealed by an investigation, a Sixth Amendment ineffective assistance claim based on failure to investigate is doomed.").

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Petitioner bears the burden of satisfying both prongs of *Strickland*. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004) (citing *Strickland*, 466 U.S. at 687) ("The burden of establishing

7

both constitutionally deficient performance and prejudice is on the defendant."). For the reasons set forth below, each of Petitioner's claims is denied.

### A. Petitioner's Competence to Stand Trial

Petitioner's chief contention is that, since his appointed counsel requested a mental health evaluation upon his return to this district, prior to trial, his trial counsel should have recognized the need for a mental health evaluation, investigated Petitioner's competence to stand trial, and raised the issue with the Court. *See,* Mem. at 13-15. Petitioner claims that his trial counsel's failure to do so evidences both ineffective assistance of counsel and a conflict of interest. *Id.* at 13, 17. The government counters that, as the Court recognized at sentencing, "'Defendant actively participated in his defense, conferring with counsel at every stage,'" and never showed signs of incompetence to stand trial. *See,* Opp'n at 5 (quoting *Qualls*, 25 F. Supp.3d at 257). Notably, while Petitioner faults trial counsel for not investigating Petitioner's competence to stand trial, it is not clear that he claims he actually was incompetent to stand trial or be sentenced. *See,* Mem. at 16 ("Therefore, Counsel did not fulfill his constitutional obligation to conduct the investigation of the Defendant's mental health and craft it *if applicable* for the benefit of the Defendant." (emphasis added)).

It is well established that a person "may not be subjected to a trial" if "he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope v. Missouri*, 420 U.S. 162, 171 (1975). A defendant is presumed competent. *Cooper v. Oklahoma*, 517 U.S. 348, 355 (1996); *United States v. Pope*, 146 F. App'x 536, 539 (2d Cir. 2005). Competence hearings are not always required and a counsel's failure to move for a competence hearing can constitute ineffective assistance only when "'there are sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt the defendant's competency, and there is a reasonable probability that the defendant would have been

found incompetent to stand trial had the issue been raised and fully considered.'" *United States v. Brooks*, 2012 WL 2000792, at *13 (E.D.N.Y. June 4, 2012) (quoting *Jermyn v. Horn*, 266 F.3d 257, 283 (3d Cir. 2001)).

Diagnosed mental illness does not equal incompetence. *See,, e.g.*, *Pope*, 146 F. App'x at 539 (quoting *United States v. Nichols*, 56 F.3d 403, 412 (2d Cir. 1995)) ("'[S]ome degree of mental illness cannot be equated with incompetence to stand trial.'"); *United States v. Chichakli*, 2014 WL 12656499, at *3-4 (S.D.N.Y. Aug. 8, 2014) (court's observations of competent participation in defense outweighed conflicting diagnoses of delusions); *Alexis v. Griffin*, 2014 WL 3545583, at *8 (S.D.N.Y. Jul. 18, 2014) (finding defendant competent despite expert testimony that defendant suffered from delusions). In determining whether a defendant is competent, the court will consider its own observations, as well as submissions by a defendant's counsel and medical experts. *See, United States v. Hung Fung Mar*, 409 F. App'x 467, 470 (2d Cir. 2011) ("[T]his evidence—the three evaluations, the district court's own observations of [defendant] during the trial, and the trial counsel's affirmation—amply supports the district court's decision not to order a competency hearing.").

Here, Petitioner fails to identify sufficient indicia of incompetence such that counsel or the Court would doubt his competence. Moreover, he fails to demonstrate that a reasonable probability exists that, with more robust proceedings, he would have been found incompetent. Petitioner's competence arguments are derivative of each other, and the Court addresses them in turn.

First, Petitioner contends that three diagnoses of delusional disorder support a find that his counsel erred in not pursuing an incompetence defense. Mem. at 11 ("Counsel's failure [was] to present and argue that the diagnosis of a 'delusional disorder' based on three independent

medical/psychological evaluations was probative and material to the question of Defendant's competency to stand trial . . . ."). However, the mere existence of mental illness is insufficient to support a finding of incompetence. *Pope*, 146 F. App'x at 539. Therefore, the three diagnoses, without more, add little to the competence analysis.

Second, Petitioner claims that the mental illness diagnoses should have alerted his trial counsel to investigate his competence further. Mem. at 11 ("Counsel did not See, the bigger picture of seeking a report about the Defendant's competency to stand trial . . . ."); *Id.* at 14 ("A failure to investigate a lack of competency defense is a failure to prepare of the highest order."). Petitioner again conflates mental illness with competence. To support this contention, Petitioner relies chiefly on trial counsel's statements at sentencing, which Petitioner views as admissions of failing to investigate Petitioner's competence. *Id.* at 18. At sentencing, trial counsel stated that the Petitioner "told wacky stories sometimes," and that he "should have focused on those wacky stories and found out whether [Petitioner] was competent to stand trial." *Id.*; Mar. 7, 2014 Sentencing Tr., Dkt. Entry No. 245, at 35:17-18, 36:1-3.

Setting aside counsel's statements at sentencing, which the Court notes were made while advocating for a sentencing departure based on reduced mental capacity, the record indicates that trial counsel did investigate Petitioner's mental illness. Upon learning that one psychologist had diagnosed Petitioner with a delusional disorder, counsel consented to the Court ordering an additional evaluation by Dr. Ryan and requested a third evaluation by Dr. Drob. *See,* Order for Mental Evaluation, Dkt. Entry No. 211, at 1 (granting joint application by government and defense counsel for an evaluation under 18 U.S.C. § 4241(b) because Petitioner may have been "suffering from a mental disease or defect that may render him incompetent"). Therefore, the Court finds Petitioner's claim that his trial counsel failed to investigate his competence meritless.

Third, Petitioner faults his counsel for not raising his competence with the Court, asserting that "[counsel] admitted his failure to recognize and bring criminal responsibility and competency to the attention of the Court during the trial . . . ." Mem. at 18. This argument ignores the fact that the law only requires counsel to raise the issue of competence where, viewed in context, there are sufficient indicia of incompetence. *Brooks*, 2012 WL 2000792, at *13 (citation omitted); *Smith v. Rock*, 554 F. Supp.2d 505, 512 (S.D.N.Y. 2008) (citing *Drope*, 420 U.S. at 179-80) ("Where there are numerous indicia of potential incompetence to stand trial, the Supreme Court has emphasized the importance of considering those factors in the aggregate."). The Court finds that Petitioner has failed to identify sufficient indicia of incompetence to create a duty for counsel to raise his competency with the Court.

Aside from the psychological evaluations, the only other potential indication of incompetence Petitioner identifies is a colloquy between him and the Court during the trial. *See,* Mem. at 4-5. At counsel's request, prior to the defense's presentation of its case, the Court advised Petitioner of his Fifth Amendment rights, emphasizing that the decision to testify belonged to Petitioner alone, and the decision to testify should be made with the advice of his counsel. *See,* Trial Transcript ("Tr."), Dkt. Entry No. 178, at 1613:21-1618:6. Petitioner argues that trial counsel's request that the Court advise Petitioner of his Constitutional rights was based on a fear that "Petitioner's 'delusional' behavior might take control" and thus, the Court should view this request as an indication of Petitioner's incompetence. Mem. at 5. The Court declines to do so as it is a meritless argument. Indeed, to adopt Petitioner's view would create an opportunity for any defendant to challenge his or her guilty plea or sentence simply because counsel asked the Court to explain to defendant a constitutional right. Most importantly, there was nothing in Petitioner's responses to the Court that indicated he was incompetent to stand trial.

To be sure, whether or not Petitioner's trial counsel affirmatively raised the competence issue, was clearly before the Court, once Petitioner was returned to this district from Canada. In ordering a second psychological evaluation by BOP, the Court explicitly recognized that "[defendant] may presently be suffering from a mental disease or defect that may render him mentally incompetent to the extent that he is unable to understand the nature and consequences of the criminal proceedings against him or to assist properly in his defense." *See,* Order for Mental Evaluation, Dkt. Entry No. 211, at 1.

Moreover, the Court's reasons for denying Petitioner's request for a diminished mental capacity sentencing departure, discussed more fully below, demonstrate that Petitioner was competent at trial. For example, the Court noted that two separate attorneys "[n]ever raised any issues concerning Defendant's mental health generally or his competence to stand trial." *Qualls*, 25 F. Supp.3d at 257. Courts have held that "'[a] failure by trial counsel to indicate that the defendant had any difficulty in assisting in preparation or in comprehending the nature of the proceedings provides *substantial evidence* of the defendant's competence.'" *Pope*, 146 F. App'x at 539 (emphasis added) (quoting *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995), *cert. denied*, 516 U.S. 927 (1995)). The Court also noted that it had observed Petitioner over the course of the month-long trial, and "[Petitioner] actively participated in his defense, conferring with counsel at every stage." *Qualls*, 25 F. Supp.3d at 257. These observations do not support a finding of incompetence. *Hung Fung Mar*, 409 F. App'x at 470 (active participation at trial supported trial court's competence finding).

Furthermore, even assuming that the psychological evaluations and colloquy with the Court could be viewed as indicia of incompetence, Petitioner provides no reasonable basis to conclude that he would have been found incompetent had the issue been raised more fully. The

Court had the benefit of three psychological evaluations and its own observations over the course of a month-long trial, as well as pretrial proceedings, in evaluating Petitioner's mental status. It is unclear what else Petitioner would have had his trial counsel and the Court do to evaluate his competence more fully, and why, in light of his active participation in his defense, any additional investigatory action would have been necessary.

Absent sufficient indicia of incompetence to create a duty to investigate the issue, the Court also rejects Petitioner's frivolous argument that his counsel did not raise competence at sentencing because doing so would put his and his counsel's interests at odds. *See,* Mem. at 17. Accordingly, the Court finds that, with respect to Petitioner's competence claims, trial counsel did not provide constitutionally ineffective assistance and was not operating under a conflict of interest.

### B. Sentencing Departure Under U.S.S.G. § 5K2.13

Petitioner also contends that his counsel was constitutionally ineffective by "not becoming familiar and proficient with and in the law of this Circuit regarding § 5K2.13 [sentencing departure] requests" and being unprepared for the hearing regarding the same. *Id.* at 3, 15. In opposition, the government argues that defense counsel sought a downward departure for diminished capacity under U.S.S.G § 5K2.13, and the Court considered counsel's arguments for the departure. Opp'n at 10-11. The Court finds Petitioner's contention meritless as without basis in fact.

As an initial matter, this claim is barred by the Second Circuit's previous consideration of the applicability of a downward departure for diminished mental capacity in this case. *Qualls*, 613 F. App'x at 30 (denying appeal of district court's refusal to downwardly depart under U.S.S.G. § 5K2.13). "It is well-established that a § 2255 petition cannot be used to relitigate questions which were raised and considered on direct appeal." *United States v. Pitcher*, 559 F.3d 120, 123 (2d Cir. 2009), *cert. denied* 558 U.S. 1137 (2010) (internal quotation marks and citations omitted).

Petitioner cannot now recast his sentencing objection as an ineffective assistance claim to afford him another bite at the apple. *Cakoni v. United States*, 2015 WL 1726448, at *10 (S.D.N.Y. Apr. 15, 2015) (citation omitted) ("The Second Circuit has already rejected these arguments . . . and they cannot be recast as ineffective assistance arguments and relitigated via a § 2255 petition . . . .").

Nonetheless, the Court finds Petitioner's sentencing departure claim meritless. First, the record belies Petitioner's contention that his counsel neither made, nor was prepared to argue, a motion for a downward departure for diminished capacity pursuant to U.S.S.G. § 5K2.13. Petitioner's counsel argued for a departure in his sentencing memorandum and sought the opinion of Dr. Drob to bolster this argument. *See,* Opp'n at 10. After holding a hearing on the issue and based on counsel's arguments and the opinions of three psychologists, the Court issued a written opinion declining to downwardly depart from the SGR because of a lack of a causal link between any purported diminished capacity and the commission of the crime. *Qualls*, 25 F. Supp.3d at 258 ("[Petitioner's] delusional disorder did not impact his culpability in a way that requires this Court to disregard the Guidelines range in favor of a downward departure.").

Second, Petitioner's disagreement with the manner and forcefulness with which his counsel argued for the sentencing departure is not a basis for claiming ineffective assistance. The Sixth Amendment guarantees a criminal defendant the right to representation. *See,* U.S. Const. amend. VI. It does not guarantee representation by the very best attorney, and "[a] claim that counsel was not the best counsel does not automatically translate into a meritorious ineffective assistance of counsel claim under the Sixth Amendment." *See, Hurel Guerrero v. United States*, 186 F.3d 275, 281 (2d Cir. 1999). Petitioner does not assert what, if any, additional arguments counsel could have made that could have resulted in the Court granting a downward departure. Accordingly, to

the extent Petitioner's claim for ineffective assistance with respect to the downward departure under U.S.S.G. § 5K2.13 is not procedurally barred, the claim is denied.

### C.      Conflict of Interest

Petitioner also claims that defense counsel had a conflict of interest that rendered his assistance constitutionally ineffective.  Mem. at 3.  Specifically, Petitioner points to two areas of conflict:  (1) a "broken" "trust factor" between Petitioner and trial counsel over Petitioner's decision whether to testify in his own defense (*Id.* at 4-6); and (2) a breakdown of the attorney-client relationship evidenced by counsel "disparaging" Petitioner in front of the Court in seeking to withdraw as counsel, and not disclosing this to Petitioner (*Id.* at 17-19 ("Counsel cannot disparage his client to the Court and then . . . act[] as if all is sudenly [*sic*] well.")).[6]  These are not grounds for claiming ineffective assistance of counsel.

To plead a conflict of interest claim sufficiently, a petitioner need only show "(1) an actual conflict of interest that (2) adversely affected his counsel's performance."  *United States v. Schwartz*, 283 F.3d 76, 91 (2d Cir. 2002) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)) (noting that a showing of prejudice is not required for actual conflicts).  An actual conflict exists "'when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action.'"  *Id.* (quoting *Winkler v. Keane*, 7 F.3d 304, 307 (2d Cir. 1993)).  If an actual conflict exists, a petitioner also must show that there was a lapse in representation.  *Id.* at 92 (citing *United States v. Iorizzo*, 786 F.2d 52, 58 (2d Cir. 1986)).  A petitioner demonstrates a lapse in representation by showing that "some plausible alternative defense strategy or tactic might have been pursued, and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or

---

[6] Petitioner also claims that counsel's failure to raise competence at sentencing and trial presented a conflict of interest. As explained above, this claim lacks merit.  *See,* Section I(A), *supra*.

interests." *Id.* (internal quotation marks omitted) (quoting *United States v. Levy*, 25 F.3d 146, 157 (2d Cir. 1994)). Failing to advise a defendant of his right to testify or overriding the defendant's desire to testify can constitute ineffective assistance, if the claim meets the requirements of *Strickland v. Washington*. *See, Brown v. Artuz*, 124 F.3d 73, 79-81 (2d Cir. 1997).

### 1. Decision to Testify

Petitioner apparently claims that he and his trial counsel disagreed over whether Petitioner should testify in his own defense. Mem. at 4-5. Petitioner does not claim that he was uninformed about his right to testify nor does he claim counsel overrode his desire to testify. Importantly, the trial transcript indicates that Petitioner fully understood his right to testify and that the decision was his. *See,* Tr. at 1617:1-8, Dkt. Entry No. 178. ("Your Honor, I do understand, that it's completely my decision whether I want to testify or not. […] If I get up on that stand, it's my decision, not my attorney's decision."); *Id.* at 1613:6-7 ("My client and I are still in discussion about whether he's going to testify."). Unable to claim that he was uninformed, Petitioner takes issue with the fact that counsel asked the Court to explain to Petitioner his Fifth Amendment rights, allegedly in an effort to reinforce counsel's advice that Petitioner not take the stand.[7] Mem. at 4-5.

The Court finds that trial counsel was not deficient in this respect. Counsel affirmatively took steps to ensure that Petitioner was aware of his right to testify, including asking the Court to advise Petitioner as to his Fifth Amendment rights. Tr. at 1613:21-24. Petitioner acknowledged that he understood his rights and understood that he alone could make the decision. *Id.* at 1617:1-

---

[7] "[S]ome state courts have ruled that, because of the fundamental and personal nature of the right to testify, the trial judge should conduct an on-the-record colloquy with the defendant to inform him of the nature and existence of this right and to ensure that any waiver of the right is knowing and intentional." *Artuz*, 124 F.3d at 78 (citing *People v. Curtis*, 681 P.2d 504, 514 (Colo.1984); *Culberson v. State*, 412 So.2d 1184, 1186-87 (Miss.1982); *State v. Neuman*, 179 W.Va. 580, 371 S.E.2d 77, 81-82 (1988)).

8. Petitioner does not allege that anyone other than he made the decision whether to testify. The Court finds that trial counsel adequately discharged his duties under the Fifth Amendment and, therefore, Petitioner's claim is denied on this ground. *See, Bennett v. United States*, 663 F.3d 71, 83-87 (2d Cir. 2011) (denying ineffective assistance claim where no evidence petitioner was not informed of his right to testify or that petitioner's desire to testify was overridden).

### 2. Trial Counsel's Comments to the Court

Petitioner also claims that defense counsel's disparaging remarks about him while seeking to withdraw as counsel are evidence of a conflict of interest. In particular, he complained that trial counsel never revealed to him his comments to the Court "in which he declared a complete breakdown of the attorney client [*sic*] privilege, and relationship . . . ." *See,* Mem. at 17-18. The Court is not persuaded.

At the hearing on his motion to withdraw as counsel, trial counsel attempted to explain, in a non-prejudicial way, why he felt he could no longer zealously represent Petitioner, noting there were other reasons for seeking to withdraw that went unsaid "in order not to prejudice [Petitioner]." Dec. 17 Tr. at 3:1-4:22. While the Court agrees with Petitioner that significant differences arose between him and trial counsel Petitioner fled to Canada, it was Petitioner's actions that led to this breakdown. This is precisely why the Court permitted Mr. Margulis-Ohnuma to withdraw as counsel. Although Petitioner takes issue with the content of the withdrawal proceedings that occurred in his absence, the Court finds that trial counsel accurately portrayed the events that led him to seek withdrawal. Petitioner used trial counsel to represent to the Court that he would appear for the conclusion of trial, when, in fact, he had no intention to do so.

Petitioner's claim that he would not have agreed to trial counsel's representation had he known the content of counsel's statements during his absence is disingenuous and unworthy of

belief. First, the conflict of which Petitioner now complains, by Petitioner's own account, was rectified soon after his return. On November 18, 2012, it was *Petitioner* who asked the Court to reappoint trial counsel. *See*, Motion to Substitute Attorney, Dkt. Entry No. 207. In his letter motion, Petitioner cited a "previous and comfortable relationship between [Petitioner] and Mr. Ohnuma" as a basis for reappointment, noting that trial counsel was "well versed in the case at hand." *Id.* This entirely undercuts Petitioner's argument that a conflict of interest existed that was so pervasive it "created structural error" in the sentencing procedures. Mem. at 19. Second, Petitioner elected to have trial counsel represent him in connection with his direct appeal. Third, the trial and appellate records amply demonstrate that trial counsel provided zealous representation at all stages of the proceedings. Accordingly, the Court finds that trial counsel provided effective assistance and Petitioner's claim is denied.

### D. Evidentiary Hearing

The Court finds it unnecessary to hold an evidentiary hearing on the issues raised by Petitioner's motion. Where, as here, the Court has familiarity with the case, it can rely on such familiarity in dismissing a petition without an evidentiary hearing. *See, Stokes v. United States*, 2001 WL 29997, at *2 (S.D.N.Y. Jan. 9, 2001) (citing *United States v. Aiello*, 900 F.2d 528, 534 (2d Cir. 1990)); *See also, Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2011) (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)) ("[A]lthough a hearing may be warranted, that conclusion does not imply that a movant must always be allowed to appear in district court for a full hearing.") (internal quotation marks omitted). The Court finds that the record here is sufficient to decide Petitioner's motion without an evidentiary hearing.

## E.    Judicial Bias

Finally, Petitioner asserts that the Court exhibited bias against him at sentencing by disparaging his family and applying several discretionary sentencing enhancements in calculating the Guidelines Range.  Mem. at 3, 19-21.  Specifically, Petitioner claims the Court's application of discretionary sentencing enhancements for being a commodities trading adviser, using sophisticated means, holding a leadership role, and a loss enhancement demonstrates bias.  *Id.* at 20.[8]  The government counters that Petitioner's claims are meritless.  Opp'n at 14-15.  The Court finds Petitioner's claim has no merit.

As an initial matter, the Court finds that, in most respects, Petitioner's judicial bias claim either is procedurally barred or defaulted.  As the government correctly points out, Petitioner raised the issue of judicial bias on appeal.  *See,* Def.'s Br. on Appeal at *67-68, *United States v. Qualls*, 2014 WL 4965853 (2d Cir. Sept. 22, 2014) ("In the event the case is remanded for resentencing, [Petitioner] respectfully requests that the Court order it to be transferred to another judge to avoid any appearance of injustice or impartiality.").  The Second Circuit rejected that argument.  *See*, *Qualls*, 613 F. App'x at 31 (Section 2255 petitions may not be used to relitigate issues previously decided on appeal.).

Second, to the extent Petitioner seeks to challenge the Court's application of the sentencing enhancements, Petitioner offers no explanation as to why he did not raise this argument on direct appeal.  "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent."  *Cox v. United States*, 783 F.3d 145, 150 (2d

---

[8] In addition to the present motion, Petitioner previously moved this Court and the Second Circuit to recuse this district judge.  Both motions were denied.  *See,* Mandate, Dkt. Entry No. 265 (denying petition for writ of mandamus seeking recusal of district judge); Summary Order (DLI), Dkt. Entry No. 266 (denying motion for recusal).

Cir. 2015) (internal quotation marks omitted) (quoting *Bousely v. United States*, 523 U.S. 614, 622 (1998)). Petitioner has failed to meet any of the *Cox* factors. Accordingly, the Court finds that Petitioner procedurally defaulted as to the sentencing guideline enhancements claim.

Petitioner fairs no better on his claim that the Court allegedly made disparaging remarks at sentencing. *See,* Mem. at 19. "[A] judge's comments during a proceeding that are 'critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.'" *United States v. Carlton*, 534 F.3d 97, 100 (2d Cir. 2008) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). "The judge's opinions or comments must demonstrate 'such a high degree of favoritism or antagonism as to make fair judgment impossible.'" *Id.* (quoting *Liteky*, 510 U.S. at 555).

Here, Petitioner offers no more than the conclusory assertions that the Court "went out of its way to disparage the Defendant's family" and held a "deep seated antagonism for the Defendant" that made "fair judgment at sentencing impossible." Mem. at 19. Having reviewed a transcript of the sentencing hearing (Apr. 16, 2014 Sentencing Tr., Dkt. Entry No. 245), the Court finds that nothing in the proceedings demonstrates "'such a high degree of favoritism or antagonism as to make fair judgment impossible.'" *Carlton*, 534 F.3d at 100 (quoting *Liteky*, 510 U.S. at 555). The Second Circuit's affirmance of Petitioner's sentence and denial of Petitioner's recusal motion further support this finding. Accordingly, for these reasons, and the reasons cited in the Court's Summary Order denying Petitioner's motion for recusal, Petitioner's claim for judicial bias, to the extent it is not procedurally barred or defaulted, is denied.

## **CONCLUSION**

For the reasons set forth above, Petitioner's motion to vacate his sentence is denied in its entirety. Petitioner is further denied a certificate of appealability as he fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *See,* Fed. R. App. P. 22(b); *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion and Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
      July 15, 2021

                                    _____
                                         /s/
                                     DORA L. IRIZARRY
                             United States District Judge